[S. F. No. 5326.  In Bank.—March 28, 1910.]

WILLIAM H. NICHOLL, Petitioner, v. JOHN A. KOSTER, Auditor of City and County of San Francisco, Respondent.

"JUVENILE COURT LAW"—SALARY OF ASSISTANT PROBATION OFFICER IN SAN FRANCISCO—APPOINTMENT BY COURT—MANDAMUS TO AUDITOR. —*Mandamus* will lie to the auditor of the city and county of San Francisco to compel him to approve and allow a demand payable out of the county treasury for the monthly salary of an assistant probation officer appointed by the superior court thereof acting as a juvenile court under the "Juvenile Court Law," approved March 8, 1909, (Stats. 1909, p. 213).

ID.—PURPOSE OF ACT—ADDITIONAL JURISDICTION—POLICE POWER—STATE POLICY. — The purpose of the act providing for the juvenile court is to provide for the care and custody of children who have shown, or who from lack of care are likely to develop criminal tendencies, in order to have them trained to good habits and correct principles; and the additional jurisdiction conferred upon the superior courts to accomplish this purpose is an exercise of the police powers of the state through the judicial department, and is matter which concerns the whole state as much as any other extension of the judicial system.  These are matters of state policy, and not "municipal affairs" within the prohibition of the constitution.

ID.—EXTENSION OF JUDICIAL SYSTEM UNDER FREEHOLDERS' CHARTERS.— The extension of the general judicial system of the state into incorporated cities having freeholders' charters does not preclude it from being exclusively exercised therein as a matter of state policy.

ID.—POWER OF LEGISLATURE OVER COURTS.—The legislature has sole authority under the constitution over the powers of the superior and inferior courts of the state, with the single exception of police courts established under freeholders' charters.

ID.—MATTERS NOT CONTROLLED BY SAN FRANCISCO CHARTER—POWERS OF SUPERIOR COURTS — REGULATION OF COUNTY OFFICERS.—The free-

holders' charter of the consolidated city and county of San Francisco does not control additional powers conferred therein upon the superior court, under the general law of the state, nor to regulate the duties of county officers as distinguished from the municipal officers of the city.

ID.—CONSTRUCTION OF CONSTITUTION—EXCEPTION OF "MUNICIPAL AFFAIRS."—The provision of the constitution excepting "municipal affairs" from the general legislative power over municipalities is to be construed as relating wholly to cities and towns exercising "municipal functions." It only applies to San Francisco, so far as it exercises "municipal functions," as distinguished from a county. With respect to the powers and functions of a county exercised by San Francisco, that section has no concern; and the power of the legislature to enact general laws for the government of counties as such, including San Francisco, remains unaffected and unimpaired by that section.

ID.—POWER OF CONSOLIDATED GOVERNMENT—COMPENSATION OF COUNTY OFFICERS.—Although under section 8½ of the constitution a freeholders' charter under a consolidated city and county government may fix the election and compensation of county officers and their deputies, yet in so far as it is silent as to the election or appointment of special officers or their compensation the general law must prevail.

ID.—SAN FRANCISCO CHARTER INAPPLICABLE TO MACHINERY OF JUVENILE COURTS AND PROBATION OFFICERS.—The San Francisco charter makes no provision for the appointment or compensation of probation officers or their assistants. They constitute part of the machinery of the judicial system of the state, and are officers of the superior court provided to enable that court effectually to exercise the special jurisdiction vested in it under the "Juvenile Law."

ID.—POWER OF LEGISLATURE TO FIX DUTIES OF COUNTY OFFICERS.—The legislature has plenary power to fix the duties of all county officers, and to impose special duties upon probation officers as new county officers additional to those imposed upon sheriffs and their deputies, and to provide for their appointment and compensation so far as not fixed under the San Francisco charter, as county officers.

ID.—POWER OF COURT TO APPOINT PROBATION OFFICERS NOT UNCONSTITUTIONAL.—The power of appointment of probation officers vested in the superior court in the exercise of its jurisdiction as a juvenile court is not unconstitutional as vesting an executive function in judicial officers. The division of power into executive, legislative, and judicial, applies to the state government, and not to the local county and municipal governments which the legislature might establish. The probation officers provided for are not state officers, but minor county officers who are assistants to the court.

ID.—COURTS PROPERLY ALLOWED TO APPOINT NEEDFUL ASSISTANTS.—The legislature may properly allow the judiciary to appoint needful assistants for the efficient carrying on of their work.

PETITION for Writ of Mandate to the Auditor of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Garret W. McEnerney, and J. R. Pringle, for Petitioner.

Francis V. Keesling, Percy V. Long, City Attorney, and Jesse H. Steinhart, Assistant City Attorney, for Respondent.

SHAW, J.—This is an original action in this court in *mandamus*, to compel the defendant, as auditor of the city and county of San Francisco, to approve and allow the demand of the plaintiff for $125, alleged to be due and payable to him out of the treasury of said city and county, for his salary for the month of April, 1909, as assistant probation officer, under the act approved March 8, 1909. (Stats. 1909, p. 213.)

This act provides for the care, custody, and maintenance of dependent and delinquent children, defines such children; gives to the superior court of the county jurisdiction to determine whether or not a child is "delinquent or dependent" as defined therein; and to commit such children to a detention home, or to the custody of some reputable person; establishes the office of "probation officer" in every county, and of "assistant probation officers" in some counties, nine being allowed in San Francisco; authorizes the judge of the superior court exercising such jurisdiction to appoint such officers and fixes the salary of an assistant probation officer in San Francisco at $125 per month, declaring that the same shall "be paid out of the county treasury of the county for which they are appointed, respectively, in the same manner as the salaries of county officers."

The defendant claims that the provision making the salaries of the probation officers and their assistants payable out of the county treasury, is invalid when applied to the consolidated city and county of San Francisco. This claim is based on two propositions: 1. That the compensation of the officers of the city and county is a municipal affair which, by section 6 of article XI of the constitution, is governed exclusively by the charter of the city and county, and that the charter has provided fully for such compensation, wherefore the act is not operative upon that point with respect to probation officers

in San Francisco; and 2. That under the last clause of sub-division 4 of section 8½ of article XI of the constitution a special city charter may provide for the election, appointment, and compensation of all officers and deputies, and that, as the charter has made such provision, the general law cannot apply to San Francisco. It is also claimed that the part of the act giving power to the judge of the superior court to appoint the probation officers is void as giving executive power to a member of the judicial department of the state.

The main purpose of the act is to provide for the care and custody of children who have shown, or who from lack of care are likely to develop, criminal tendencies, in order to have them trained to good habits and correct principles. To accomplish this it gives additional jurisdiction and power to the superior courts of the state and provides the officers neces-sary for the execution of that jurisdiction and power. It is an exercise of the police powers of the state, through the judicial department. It is a matter which concerns the whole state as much as any other extension of the judicial system. These have been held to be matters of state policy and not "municipal affairs" within the meaning of that term in the constitution, although the functions of the particular exten-sion of the system may be exercised exclusively within incor-porated cities having a freeholders' charter. (*Graham* v. *Fresno,* 151 Cal. 470, [91 Pac. 147]; *Fleming* v. *Hance,* 153 Cal. 165, [94 Pac. 620]; *Robert* v. *Police Court,* 148 Cal. 136, [82 Pac. 838]; *Jackson* v. *Baehr,* 138 Cal. 270, [71 Pac. 167].) Under section 1 of article VI of the constitution, the judicial power of the state is vested in the various courts there named, and such other inferior courts as the legislature may establish in any city, or town, or city and county. By section 5 of the same article, it is declared that the superior courts shall have jurisdiction of all such special cases and proceedings as are not otherwise provided for. The effect of the decisions last cited is that the legislature has sole authority over the matter of the jurisdiction and powers of the superior and inferior courts of the state, with the single exception of the police courts of cities, which, under section 8½ of article XI, may be established by the freeholders' charter of such cities. It is perfectly obvious, therefore, that the San Francisco char-ter does not control the provisions of this general law, so

far as the law gives additional jurisdiction to the superior court, prescribes the necessary procedure and provides the means of exercising and enforcing that jurisdiction.

The superior courts are established in each of the counties of the state. The consolidated city and county of San Francisco partakes of the nature of a city and a county. It has the powers and performs the functions of both. The section of the constitution declaring that municipal charters prevail over general laws in municipal affairs relates solely to cities and towns. It has no application to San Francisco, except in so far as that subdivision of the state possesses and exercises municipal functions and constitutes a city, as distinguished from a county. With respect to the powers and functions of a county exercised by San Francisco, as in any other county of the state, that section has no concern. The power of the legislature to enact general laws for the government of counties, as such, including San Francisco, remains unaffected, and unimpaired by that section. It does not make the charter of San Francisco paramount to such laws as to county affairs.

The only section of the constitution which abridges the power of the legislature in this respect over counties, is section 8½ above mentioned. The last clause of that section is as follows:—

"Where a city and county government has been merged and consolidated into one municipal government, it shall also be competent in any charter framed under said section eight of said article eleven, to provide for the manner in which, the times at which, and the terms for which the several county officers shall be elected or appointed, for their compensation, and for the number of deputies that each shall have, and for the compensation payable to each of such deputies."

In *Fleming* v. *Hance,* 153 Cal. 165, [94 Pac. 620], the court, speaking with reference to legislative power to establish inferior courts, said: "It is thoroughly settled by the decisions of this court that the legislature had the power, prior to the constitutional amendments in question, not only to establish police, or other inferior courts, in municipalities, but to provide for the payment of the salaries and office rent of the judges or justices of such courts out of the county treasury. (*Jenks* v. *Council,* 58 Cal. 576; *Bishop* v. *Council,* 58 Cal. 572;

*Coggins* v. *City of Sacramento,* 59 Cal. 599.)    It would seem
to follow from the views above expressed, that in cities gov-
erned by charters which have made no provisions for police
courts (or other inferior courts exercising similar functions)
the legislature may still, notwithstanding the adoption of sec-
tion $8\frac{1}{2}$ and the amendment of section 6 of article XI of
the constitution, provide that the city must pay the salaries
of the police judges or city justices created by general law."
The principle applied in this passage to inferior courts estab-
lished by general laws under section 1 of article VI of the
constitution, is equally applicable to laws giving additional
jurisdiction to superior courts, such as that here involved.
The San Francisco municipal charter makes no provision for
the compensation of probation officers and their assistants.
They constitute a part of the machinery of the judicial system
of the state, officers of the superior court provided to enable
that court to effectually exercise the special jurisdiction given
by the act, concerning which the charter does not speak.    Con-
ceding that if their compensation was provided for in the
charter its provisions would prevail over the provisions of
the act, both as to the amount and as to the manner of pay-
ment, the necessary conclusion, in the absence of such charter
provisions, in view of this principle, is that the act is in force
and that the city and county is bound by its provisions relat-
ing to the compensation of the probation officers of the so-
called "juvenile court."

The defendant contends that these officers are nothing more
nor less than deputy sheriffs, and that as the charter provides
for the number and compensation of such deputies, and for an
increase in their number when necessary, the attempt of the
legislature to add to their number by the device of calling the
additional deputies probation officers is unavailing and with-
out effect.    But section 5 of article XI confers upon the legis-
lature plenary power to prescribe the duties of sheriffs and
other county officers.    Section $8\frac{1}{2}$ does not say that the duties
of the county officers may be fixed by the charter of a consoli-
dated city and county.    That power still remains with the
legislature.    The duties to be performed by these probation
officers are in some respects not unlike those prescribed for
sheriffs by the previous laws on the subject.    He was required
to "obey all lawful orders and directions of all courts held

within his county" (Pol. Code, sec. 4157; Stats. 1907, p. 402). Perhaps the juvenile court jurisdiction of the superior court could have been carried on within the city and county of San Francisco by requiring the sheriff and his deputies to execute its orders and processes in that behalf. But these duties are of a character not before imposed upon sheriffs. The probation officer is required to inquire into the antecedents, character, family, history, environment, and cause of delinquency of every child brought before the court, to be present in court and represent the interests of such child upon the hearing as to its being a delinquent, to give the court such information and assistance upon that hearing as the court may require, to take charge of the child before and after the hearing if so ordered, and, in some circumstances, he is required to act in a capacity similar to that of a guardian of such child. Section 5 of article XI gives the legislature power to create such other county offices and provide for the appointment of persons thereto, as public convenience may require, in addition to the officers specifically named therein. For the performance of these new duties of a character different from those usually imposed on sheriffs the legislature undoubtedly had the power, under this constitutional provision, to create a new county office and provide for the appointment of persons to perform the duties thereof who would be county officers. And as the city charter neither creates such an office, prescribes the duties thereof, nor provides any compensation for the persons who perform the same, there is nothing in its provisions which can in any way affect the validity and force of the declaration of the act that such compensation must be paid out of the county treasury. The treasury of the city and county of San Francisco, is, for that purpose, a county treasury.

The remaining objection is that the appointment of these probation officers is an act of the executive department of the state and that the judge of the superior court, being an officer of the judicial department of the state, cannot be vested with power to exercise functions belonging to the executive department. Article III of the constitution provides that "no person charged with the exercise of powers properly belonging to one of those departments shall exercise any functions appertaining to either of the others, except as in this constitution expressly directed or permitted." In *People* v.

*Provines*, 34 Cal. 525, this court decided that this provision of the former constitution, which is in the identical language above given, referred to the respective departments of the state government and not to the local county and municipal governments which the legislature might establish.    The superior court is one of the courts of the state and the judge of that court may perhaps be classed as a person charged with the exercise of powers belonging to the judicial department of the state.    But the probation officers in question are not officers of the state government.    They are minor officers of the local county government.    The appointment of such officers ·is not necessarily a part of the duties or functions of the executive department of the state government, according to the system outlined in the constitution.    Perhaps the legislature, after creating such county offices, could authorize the state executive to appoint persons to fill them, but it is no part of the constitutional scheme of government that such appointments should be made by state officials.    The judge of the superior court, when he appoints these probation officers, does not exercise functions intended to be described in the constitution as those appertaining to the executive department of the state.    It is apparent that the act does not conflict with this provision of the constitution.

Furthermore, the appointment of persons to discharge duties of this character, acts necessary to be done to enable a court to transact its judicial work in an orderly and expeditious manner, or necessary or even merely convenient to the exercise of its jurisdiction, has always been recognized as a power incidental to the judicial office.    The legislature may indeed provide for the appointment of such assistants of the court by the executive department, or by election of the people, and thus relieve the court of the burden of choosing such persons.    But if the legislature or the constitution should fail to provide such persons, a court invested with jurisdiction would have all the powers necessary to its convenient exercise and could appoint such assistants as might be required. And doubtless the legislature can authorize the court to appoint such assistants.    Instances are not wanting.    The supreme court is authorized to appoint bailiffs, secretaries, phonographic reporters, a librarian, and janitors.    (Code Civ. Proc., secs. 47, 265; Pol. Code, secs. 769, 2314.)    The district

courts of appeal are authorized to appoint a stenographer and a bailiff. (Pol. Code, sec. 758.) These powers are not given to the courts by the constitution. They have never been considered a part of the functions of the executive department of the state. The judges of the superior courts appoint receivers, referees, phonographic reporters, and guardians, each of whom may be said to be assistants of the court, necessary to the exercise of its jurisdiction. The functions of these probation officers are in some respects similar to those of guardians, in others like those of a bailiff or sheriff, and in others not unlike those of an attorney. The appointment of persons to discharge such duties is clearly not a necessary part of the functions of the executive department of the state government.

Indeed it may be said that the selection of officers is not, *per se*, abstractly speaking, an exclusive function of the executive department. It may be done by the people by election. The executive department has power to appoint the executive officers pertaining thereto, if no provision for their election is made, and in that case such appointment will be a part of the duties of that department. But if assistants are required for the judicial or legislative departments and no provision is made for their election, there is nothing in the constitution that can properly be construed to require that the appointment of such assistants must be committed to the executive department. There is much force in the concurring opinion of Justice Sawyer in *People* v. *Provines,* 34 Cal. 541, that the appointment of an officer is not strictly or essentially either a legislative, executive or judicial act, within the meaning of article III of the constitution.

For the reasons here given we are of the opinion that the appointment of the probation officers in the city and county of San Francisco was lawfully delegated to the judge of the superior court and that the salary provided by the act is lawfully payable out of the treasury of the city and county.

Let the writ issue as prayed for.

Angellotti, J., Sloss, J., Melvin, J., Lorigan, J., and Henshaw, J., concurred.