[L. A. No. 11805. In Bank.—November 3, 1930.]

MADGE MILLHOLEN, Petitioner, v. RAY L. RILEY, Controller, etc., et al., Respondents.

Bart F. Wade and H. C. Lillie for Petitioner.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondents.

PRESTON, J.—Original proceeding in mandate.

Petitioner was on July 1, 1929, appointed a secretary of the District Court of Appeal, Second Appellate District, Division Two. Respondents are the State Controller, the Department of Finance of the State of California and the members thereof.

Petitioner received her appointment from the court she was serving and her compensation for such services was fixed by the same authority at $225 per month. She served during the months of July and August, 1929. The court approved her demand for said sum as salary for each of said months and ordered it paid from the treasury of the state. Petitioner thereupon made demand upon respondent Department of Finance for approval of said claims and upon

the Controller for the issuance of warrants in her favor in said amounts. Her request was refused. This proceeding followed, the issue being made by petition and answer. Admittedly ample funds appropriated by the legislature for the support and maintenance of the court exist and are available for the liquidation of petitioner's claims.

In a budget proposed to the legislature for the fiscal years from July 1, 1929, to June 30, 1931, pursuant to section 34 of article IV of the state Constitution, an appropriation of $208,530 was requested for support of the Second District Court of Appeal, which included the following items for each of said years: Secretaries (law), $9,000; secretaries (10 months), $3,000. The budget was reduced by the legislature, which appropriated a total amount of $202,330 for the support of said court, without specification of any kind as to the manner in which the money should be expended.

■ If the authority to appoint and fix compensation of persons in the category of petitioner is not lodged elsewhere by some other provision of the law, it seems too clear for argument that the court itself, in aid of the duty enjoined upon it by law, has both the power of appointment and the power of fixing compensation. In other words, in the absence of any enactment to the contrary, the duty to function includes by implication of law the power to properly apply the funds appropriated for that purpose. Abundant authority exists to this effect: *Rankin* v. *Colgan,* 92 Cal. 605 [28 Pac. 673]; *Bateman* v. *Colgan,* 111 Cal. 580, 587 [44 Pac. 238]; *Harris* v. *Gibbons,* 114 Cal. 418 [46 Pac. 292]; *Lewis* v. *Colgan,* 115 Cal. 529 [47 Pac. 357].

In the appropriation bill is found the following provision: "The officers of the various departments, boards, commissions and institutions for whose benefit and support appropriations are made in this act are expressly forbidden to make any expenditure in excess of such appropriations, except the consent of the state department of finance be first obtained, and a certificate in writing, duly signed by the director of said department, of the unavoidable necessity of such expenditure. . . . '' (Stats. 1929, p. 98.) This provision further confirms the conclusion above deduced.

■ This being true, we are required to search elsewhere to see if the power to fix the compensation of petitioner

has been delegated to any other officer or bureau. The position of respondents is that the Department of Finance has that power abiding in it by virtue of sections 654 and 675a of the Political Code. Section 654 gives the Department of Finance general supervision over the financial and business policies of the state. Section 675a (Stats. 1927, p. 455), so far as here involved, reads as follows: "All contracts entered into by any state officer, board, commission, department, or bureau for the purchase of supplies, materials, or services, shall before the same become effective be transmitted with all papers, estimates and recommendations concerning the same to the state department of finance for consideration. If such department approve the same, the contract shall, from the date of such approval, be in force and effect. . . . "

At the time these two sections were enacted, a new article was added to the Political Code, which covers sections 654 to 685, inclusive (Stats. 1927, chap. 251, pp. 449–459). In the margin opposite the statute (Stats. 1927, sec. 675a, p. 455) is found this annotation: "State departmental contracts". This article was added pursuant to the policy announced in part III, title I, chapter 3, article II, of said Political Code, being sections 348 to 359a, inclusive, thereof. Section 348 then read: "It is the policy of this state to vest in the governor the civil administration of the laws of the state and for the purpose of aiding the governor in the execution and administration of the laws to divide the executive and administrative work into departments as provided by law."

Taking these provisions in the context where found, coupled with the objects and purposes for which the enactments were made as disclosed in the other provisions of the same title, we have no hesitancy in declaring that the said sections of the code here invoked were intended to and do apply only to the executive department of the government and were not intended to and do not apply to the judicial department thereof set up by article VI, section 1, of the Constitution. The word "department" found in said sections simply relates to the administrative departments created in aid of the Governor in the enforcement and execution of the laws of the state.

A case practically on all-fours with the one before us, where an able discussion of this identical question under a similar situation is found, is *State* v. *Cunningham*, 39 Mont. 165 [101 Pac. 962]. The statute there involved (sec. 262, Rev. Codes 1907) read: "The board of examiners may at any time when necessary employ clerical help for any state officer or board, and no clerks must be employed by such officer or board without the authority of the board of examiners, and no such clerks must be employed by the board of examiners except when all the duties of the office cannot be performed by the officer himself." The court in part said: "Whatever application section 262, *supra*, may have to the help employed in the executive department, it cannot have, and was not intended to have, any application to the necessary employees attached to this court. This court, viewed as a department of the state government, is neither an officer nor a board, and therefore does not fall within the terms of this provision."

In fact, it may well be doubted whether the employment of petitioner is the making of a contract for personal services. Her duties partake more of the nature of a public office and there seems to be no contractual relation in the holding of such a position. (*Mansfield* v. *Chambers*, 26 Cal. App. 499 [147 Pac. 595]; *Mono Co.* v. *Industrial Acc. Com.*, 175 Cal. 752 [167 Pac. 377].)

Another observation makes the conclusion above referred to manifest. Section 682 of the Political Code, a part of the same article (Stats. 1927, p. 458), provides in part: "The department of finance shall also be in possession and control of all records, books, papers, offices, equipment, supplies, moneys, funds, appropriations, land and other property, real or personal, now or hereafter held for the benefit or use of all of said bodies, offices and officers mentioned in the article. . . . " A literal interpretation of this section would require the judicial department of the state to transfer the possession of the court records and all its equipment to the said Department of Finance.

We may reach the same conclusion in another manner. A court set up by the Constitution has within it the power of self-preservation, indeed, the power to remove all obstructions to its successful and convenient operation.

This arises from the fact that it is part of and belongs to one of the three independent departments set up by the Constitution, article VI, section 1. This power is recognized, among other places, in sections 47 and 144 of the Code of Civil Procedure. While the above statement is true, there is this qualification thereof, which has been recognized at all times in this state—the legislature may at all times aid the courts and may even regulate their operation so long as their efficiency is not thereby impaired.

In *Brydonjack* v. *State Bar*, 208 Cal. 439 [66 A. L. R. 1507, 281 Pac. 1018, 1020], this court said: "Our courts are set up by the Constitution without any special limitations; hence the courts have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government. (*In re Garner*, 179 Cal. 413 [177 Pac. 162]; *Nicholl* v. *Koster*, 157 Cal. 416 [108 Pac. 302].) . . . The sum total of this matter is that the legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions."

Admittedly, therefore, the legislature, within the foregoing limitations, could in its wisdom provide the compensation that should be paid petitioner and could delegate that duty to a bureau of the executive department thereof. As is said in *Nicholl* v. *Koster*, 157 Cal. 416, 423 [108 Pac. 302, 305]: "The legislature may indeed provide for the appointment of such assistants of the court by the executive department, or by election of the people, and thus relieve the court of the burden of choosing such persons. But if the legislature or the Constitution should fail to provide such persons, a court invested with jurisdiction would have all the powers necessary to its convenient exercise and could appoint such assistants as might be required." For a profound discussion of the inherent power of the court under circumstances quite similar to the case at bar see *State* v. *Cunningham, supra*.

But, as above noted, we have found that the legislature has not reposed the power to appoint petitioner or to fix her compensation in any other officer or bureau. This, indeed, is as it should be. A law secretary is called upon to do work of a highly specialized and confidential charac-

ter. Such a person must possess certain legal attainments as well as certain powers of discretion and discernment that may not be so readily recognized or appraised by another as by a member of the judiciary. Besides, such person necessarily must have advance knowledge of decisions and judgments of the court. For these and many other reasons that could be assigned, we have no doubt that it was the intention of the legislature to leave both the appointment and the compensation of law secretaries to the courts they serve. Of course, respondents have the power of audit of petitioner's claim, but this is far from being authorized to appoint her or to fix her compensation.

In the case of *U'Ren* v. *State Board of Control*, 31· Cal. App. 6 [159 Pac. 615, 618], the court had under consideration in a situation similar to the instant case, the duties of the State Board of Control, a predecessor of respondent Department of Finance, and there said: "The doctrine is well settled in numerous cases that where one official, board, or body is given authority by statute to create an obligation against a specific fund in the state treasury, and another official, board, or body is intrusted with the powers of an auditor in respect to claims generally against the state, the powers and duties of the latter in respect to such claims may be ·controlled by the courts and compelled by writs of mandate." (*Lewis* v. *Colgan*, *supra; Scott* v. *Boyle*, 164 Cal. 321 [128 Pac. 941], and cases cited; *Lawrence* v. *Booth*, 46 Cal. 187; *Sullivan* v. *Gage*, 145 Cal. 759 [79 Pac. 537].)

It is now well settled that the legislature, in conferring the authority upon a bureau, court or officer to fix in its discretion the compensation of persons upon whom the duty of carrying out some duly authorized governmental object has been cast, is not thereby delegating legislative power to another but in reality is authorizing but an executive act. (*Nicholl* v. *Koster*, *supra; Stephens* v. *Chambers*, 34 Cal. App. 660 [168 Pac. 595]; *Tarpey* v. *McClure*, 190 Cal. 593 [213 Pac. 983]; *Ryan* v. *Riley*, 65 Cal. App. 181, [223· Pac. 1027].) For a discussion of the general subject see *Davenport* v. *Elrod*, 20 S. D. 567 [107 N. W. 833]; *State ex rel. Gubbins* v. *Anson*, 132 Wis. 461 [112 N. W. 475]. The doctrine found in *Smith* v. *Strother*, 68 Cal. 194 [8 Pac. 852], that is opposed to this holding may now

36

be held abrogated by these later and, we think, sounder views on the subject.

Let the writ issue as prayed.

Richards, J., Curtis, J., Seawell, J., and Waste, C. J., concurred.