[No. A118375. First Dist., Div. Three. Mar. 25, 2008.]

LOS ANGELES COUNTY DEPENDENCY ATTORNEYS, INC., Plaintiff and Appellant, v.
DEPARTMENT OF GENERAL SERVICES, Defendant and Respondent;
KENNETH KREKORIAN et al., Real Parties in Interest and Respondents.

■■■■■■■■

## COUNSEL

Darold Myles Shirwo, Daniel G. Rooney; The Sapiro Law Firm, Jerome Sapiro, Jr., and David A. Sauers for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Christopher E. Krueger, Assistant Attorney General, Stephen P. Acquisto and Jason E. Rios, Deputy Attorneys General, for Defendant and Respondent.

No appearance for Real Parties in Interest and Respondents.

## OPINION

**POLLAK, J.**—Los Angeles County Dependency Attorneys, Inc. (LACDA), submitted a proposal to the Administrative Office of the Courts (AOC) to provide representation to indigent parents and children in juvenile dependency proceedings in Los Angeles County Superior Court. Although LACDA's proposal allegedly was the lowest monetary bid, the contract to perform these services was awarded to real parties in interest Kenneth Krekorian and Los Angeles Dependency Lawyers, Inc. (collectively, Krekorian). The AOC made the award without submitting the proposed contract to the Department of General Services (DGS) for its review and approval. After unsuccessfully pursuing administrative protest proceedings, LACDA sought a writ of mandate against the AOC for allegedly failing to comply with requirements applicable to the award of the contract and to the conduct of the protest proceedings, and against DGS for allegedly failing to perform "a clear, present and ministerial duty to review and approve contracts of respondent AOC pursuant to Public Contract Code[1] section 10295." The trial court sustained the demurrer of DGS without leave to amend, concluding that section 10295 does not require DGS to review and approve AOC contracts for services. LACDA now appeals from the judgment dismissing its petition against DGS. We agree that section 10295 does not apply to contracts entered by the judicial branch of state government and, therefore, shall affirm the judgment.

---

[1] All statutory references are to the Public Contract Code unless otherwise indicated.

## Background

LACDA's amended petition alleges that on October 28, 2005, the AOC, the administrative arm of the Judicial Council of California,[2] issued request for proposal CFCC 05-0 (the RFP) for the procurement of legal services to represent indigent parents and children in juvenile dependency proceedings in Los Angeles County Superior Court. Both LACDA and Krekorian submitted proposals, and the AOC decided to award the contract to Krekorian. LACDA protested this determination, claiming it was the low bidder and that in selecting Krekorian, the AOC had failed to follow the competitive bidding requirements included in the RFP. For present purposes, it is not necessary to describe the respects in which LACDA claimed, and continues to claim, that the method by which the AOC chose Krekorian was deficient. When the AOC indicated that it was rejecting the protest, LACDA filed a petition in superior court seeking a writ of mandate against the AOC based on the alleged deficiencies. Only the ruling relating to the cause of action involving DGS is now before this court, and the AOC is not a party to the appeal.

The amended petition also alleges that the AOC failed to submit the proposed contract with Krekorian to DGS for its review and approval, as assertedly required by section 10295. The fourth cause of action seeking a writ of mandate alleges that DGS has a clear, present and ministerial duty to review and approve AOC service contracts "as a condition of the validity and enforceability of the contract" and "to deny its approval of a competitively bid contract if the contract does not meet the specifications or other conditions of the bidding process." The amended petition further alleges that "the refusal to deny approval of a contract award to real parties in interest under the RFP would be a breach of the duties of the [DGS] and abuse of discretion." The amended petition recites that the court had previously denied an application for a temporary restraining order enjoining award and performance of the contract with Krekorian, and prays for an order "prohibiting the state from proceeding with an award to or performance of a contract by real parties in interest or any bidder, other than LACDA, pursuant to the RFP."

In sustaining without leave to amend DGS's general demurrer to the amended petition, the trial court concluded that "the contracts here are not subject to section 10295 but are in fact subject to the more specific provisions contained in article 4 of the Public Contract Code (§ 10335, et seq.)," and that the judicial branch is expressly excluded from those agencies that are required by section 10335 to submit their service contracts to the DGS for

---

[2] The judicial branch of government is established in article VI of the California Constitution, and the Judicial Council is created as an agency of the judicial branch in article VI, section 6. Subdivision (c) of section 6 authorizes the Judicial Council to appoint an Administrative Director of the Courts, who heads the AOC.

review and approval. LACDA has filed a timely notice of appeal from the subsequent judgment dismissing DGS from the action.

## Discussion

The principal issue in this case arises from the inclusion in the Public Contract Code of two substantially overlapping provisions: sections 10295 and 10335. Both are within chapter 2 of part 2 of division 2 of the code; section 10295 is within article 2 of chapter 2, entitled "Approval of Contracts," and section 10335 is within article 4, entitled "Contracts for Services." Both sections, and the articles within which they appear, contain requirements for the entry of various types of contracts by state agencies.

Section 10295, subdivisions (a) and (b) read in relevant part: "All contracts entered into by any state agency for . . . services, whether or not the services involve the furnishing or use of goods or are performed by an independent contractor . . . are void unless and until approved by [DGS]. [¶] Every contract shall be transmitted with all papers, estimates, and recommendations concerning it to the department and, if approved by [DGS], shall be effective from the date of the approval.[3] [¶] . . . This section applies to any state agency that by general or specific statute is expressly or impliedly authorized to enter into transactions referred to in this section." Subdivision (c) then lists six categories of contracts to which the section does not apply. Contracts entered by the AOC or by other subdivisions of the judiciary are not included within the exceptions. Section 10295 contains no definition of a "state agency."

Section 10335, subdivision (a) provides in part: "This article shall apply to all contracts . . . entered into by any state agency for services to be rendered to the state, whether or not the services involve the furnishing or use of equipment, materials, or supplies or are performed by an independent contractor. Except as provided in Section 10351 [relating to contracts under $75,000], all contracts subject to this article are of no effect unless and until approved by [DGS]. Each contract shall be transmitted with all papers,

---

[3] Subdivision (a) of section 10295 currently reads in full as follows: "All contracts entered into by any state agency for (1) the acquisition of goods or elementary school textbooks, (2) services, whether or not the services involve the furnishing or use of goods or are performed by an independent contractor, (3) the construction, alteration, improvement, repair, or maintenance of property, real or personal, or (4) the performance of work or services by the state agency for or in cooperation with any person, or public body, are void unless and until approved by the department. [¶] Every contract shall be transmitted with all papers, estimates, and recommendations concerning it to the department and, if approved by the department, shall be effective from the date of the approval."

estimates, and recommendations concerning it to [DGS] and, if approved by [DGS], shall be effective from the date of approval. This article shall apply to any state agency that by general or specific statute is expressly or impliedly authorized to enter into the transactions referred to in this section. . . ." The provision then lists certain types of contracts to which the section does not apply. Contracts entered by the courts are not listed as an exception, but section 10335.7 defines a "state agency" for purposes of article 4 to mean "every state office, department, division, bureau, board, or commission, but does not include the Legislature, the courts, or any agency in the judicial branch of government."

LACDA argues that section 10295 applies to contracts entered by the AOC because the AOC is a state agency, and because, unlike article 4, article 2 contains no definition excluding the courts from the definition of a "state agency" and the AOC comes within none of the exceptions included in section 10295.

*Even if section 10295 applies to service contracts entered by the AOC, it is doubtful that the DGS is subject to the issuance of a writ of mandate*

■ DGS's first argument in support of the judgment dismissing it from the action avoids the necessity of reconciling the two statutory provisions. DGS argues that even if section 10295 requires the AOC to submit its service contract to DGS for its review and approval, the amended petition contains no allegation that the AOC has done so, and "[u]nless and until the contract and the related papers are transmitted to DGS, DGS does not have anything to review. And in the absence of a contract to review, any duty that DGS might have to review such contracts has not yet arisen." In the absence of a clear, present and usually ministerial duty which DGS is failing to perform, there is no basis to issue a writ of mandate against it. (*State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 741 [16 Cal.Rptr.2d 727]; *Baldwin-Lima-Hamilton Corp. v. Superior Court* (1962) 208 Cal.App.2d 803, 813 [25 Cal.Rptr. 798].)

LACDA responds that DGS failed to make this contention in the trial court and that, in all events, the argument understates the responsibilities of DGS. Citing various provisions in the Government Code[4] and in the State

---

[4] LACDA cites Government Code section 14600, which provides: "[DGS] shall develop and enforce policy and procedures and shall institute or cause the institution of those investigations and proceedings as it deems proper to assure effective operation of all functions performed by the department and to conserve the rights and interests of the state." Government Code section 14615, subdivision (a) provides: "[DGS] has general powers of supervision over all matters concerning the financial and business policies of the state in regard to the duties, powers,

Administrative Manual,[5] LACDA argues that DGS "is required to develop and to enforce policies and procedures to carry out all functions performed by it and must protect the rights and interests of the state." It argues that DGS "has both the duty and the authority to review the contract here" and that mandate is proper because it is refusing to perform that duty. (*Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 222 [86 Cal.Rptr.2d 209]; *Consolidated Printing & Pub. Co. v. Allen* (1941) 18 Cal.2d 63, 66 [112 P.2d 884].)

We entertain some doubts as to whether either section 10295 or any of the cited Government Code provisions should be read to place on DGS the responsibility to police whether state agencies are submitting proposed contracts for its review as they are required to do. Contracts subject to section 10295 that are not approved by DGS are, by the terms of the statute, "void" and no further enforcement may be necessary. However, this issue was not considered in the trial court and has not been fully addressed in the briefing in this court. Since we conclude below that the AOC is not obligated to submit its service agreements to DGS for its review and approval, we see no need to decide the academic question of what DGS's obligations would be if the AOC had such a duty.

*The AOC is not a "state agency" within the meaning of section 10295.*

DGS advances essentially two arguments as to why the overlapping sections of the Public Contract Code, sections 10295 and 10335, should not be read to require it to review service contracts entered by the AOC. First, it contends that since section 10295 applies generally to "all types of contracts for goods, services, equipment, etc." and section 10335 applies specifically to service contracts only, we should follow the rule of statutory construction that "if a specific statute is enacted covering a particular subject, the specific statute controls and takes priority over a general statute encompassing the same subject." (*Estate of Kramme* (1978) 20 Cal.3d 567, 576 [143 Cal.Rptr. 542, 573 P.2d 1369].) Section 10335, by virtue of the definition of a state agency in section 10335.7, explicitly excludes any agency in the judicial branch of government from the requirement of obtaining DGS approval of its

---

responsibilities, and jurisdiction specifically vested in the department. Whenever the department deems it necessary . . . it shall institute or cause the institution of those investigations and proceedings as it deems proper to conserve the rights and interests of the state."

[5] Section 0110 of the State Administrative Manual states: "DGS develops policies and procedures to ensure effective developmental operations. DGS also enforces its policies, investigates and holds proceedings as it deems necessary to conserve the rights and interests of the State." Section 0170 provides: "[The Department of Finance] and DGS are responsible for generally supervising all matters concerning the financial and business policies of the State. Unless exempted, all State agencies must have their contracts and agreements approved by DGS. . . ."

service contracts. Reading section 10295 to apply to the judicial branch would, it contends, render section 10335 "nugatory." ■ When interpreting related statutory provisions, an interpretation that renders one section nugatory should be avoided if possible. (*People v. Craft* (1986) 41 Cal.3d 554, 561 [224 Cal.Rptr. 626, 715 P.2d 585].) Moreover, DGS argues that the Brown-Presley Trial Court Funding Act (Gov. Code, § 77001 et seq.) provides a comprehensive statutory scheme for the expenditure of funds for court operations, including payment of court-appointed counsel in juvenile dependency proceedings (Gov. Code, § 77003, subd. (a)(4)), and includes no provision requiring approval of expenditures by DGS. Reading section 12905 to require such approval would, it contends, be inconsistent with Government Code section 77206, subdivision (a), which provides, "Notwithstanding any other provision of law, the Judicial Council may regulate the budget and fiscal management of the trial courts,"[6] and would "improperly usurp the authority" vested in the judiciary. For these reasons, DSG argues, section 10335, rather than section 10295, should be regarded as the controlling provision and the courts are explicitly excluded from the scope of section 10335.

Notwithstanding LACDA's arguments to the contrary, these contentions have considerable force. LACDA argues that the principle that a specific statute prevails over a general one applies only when the two sections cannot be reconciled (*People v. Wheeler* (1992) 4 Cal.4th 284, 293 [14 Cal.Rptr.2d 418, 841 P.2d 938]) and that there is no necessary inconsistency between sections 10295 and 10335. LACDA asserts that section 10335, and the whole of article 4, should be read to apply to service contracts entered only by the executive branch, while section 10295 and article 2 should be read to apply more broadly to the Legislature and the courts as well as the executive branch. Yet, there is no satisfactory explanation why the courts (and the Legislature) would be excluded from the scope of section 10335 if they were intended to be bound by section 10295. Similarly, LACDA sees no inconsistency between a requirement that DGS approve service contracts entered by the courts and the authority that the Brown-Presley Trial Court Funding Act confers expressly upon the Judicial Council and the presiding judges of each court. Indeed, LACDA argues, "the Judicial Council should welcome [DGS]'s assistance to protect the public from misuse of public funds." Nonetheless, it is difficult to reconcile this view with the language of Government Code section 77206—that the Judicial Council may regulate the budget and fiscal management of the trial courts "[n]otwithstanding any other provision of law,"—and the language of Government Code section 77009—

---

[6] Government Code, section 77009, subdivision (g)(2) also provides: "The presiding judge of the superior court or his or her designee, shall authorize and direct expenditures from the [Trial Court Operations Fund] and the county auditor-controller shall make payments from the funds as directed." There is no provision for DGS review and approval.

that the county auditor-controller shall make payments from the Trial Court Operations Fund as directed by the presiding judge—both without any reference to approval by DGS.

■ Compelling as these arguments may be, DGS's final contention is conclusive: the subdivisions of the judicial branch of government are not "state agenc[ies]" within the meaning of section 10295. The term "state agency" is defined differently in various statutes. (E.g., compare §§ 10295.1, 10335.7 with Gov. Code, §§ 11000, 4475, 6252, subd. (a), 65934, 7465, subd. (e), 8869.82, subd. (j), 14773.) As indicated above, section 10295 contains no explicit definition for purposes of that section and, unlike the definition incorporated into section 10335, there is no explicit exclusion of the courts. However, the historical derivation of section 10295 makes clear that the term "state agency" as used in this section is not intended to include the courts.[7]

Section 10295 traces back to what was originally Political Code section 675a (Stats. 1927, ch. 251, § 1, pp. 449, 455). That section read: "All contracts entered into by any state officer, board, commission, department, or bureau for the purchase of supplies, materials, or services, shall before the same become effective be transmitted with all papers, estimates and recommendations concerning the same to the state department of finance for consideration. If such department approves the same, the contract shall, from the date of such approval, be in force and effect." In *Millholen v. Riley* (1930) 211 Cal. 29, 32 [293 P. 69], the Supreme Court had "no hesitancy in declaring" that this and related sections "were intended to and do apply only to the executive department of the government and were not intended to and do not apply to the judicial department thereof . . . ."

Over the years this provision was broadened and modified, recodified, and the responsibility to approve contracts transferred to DGS. (See Stats. 1931, ch. 325, § 6, p. 846; Stats. 1935, ch. 69, § 1, p. 404; Stats. 1943, ch. 965, § 1, p. 2849.) In 1945 the provision was placed in the Government Code as section 13370, and the language, "any state officer, board, commission, department, or bureau" was replaced with "any State agency." (Stats. 1945, ch. 115, § 1, p. 485.) In 1949, 1951 and 1957 further amendments were made both to expand the scope of the statute and to create specified exceptions to its application. (Stats. 1949, ch. 605, § 3, p. 1101; Stats. 1951, ch. 1148, § 2, p. 2924; Stats. 1957, ch. 1932, § 466, p. 3440.) In 1965 the section became Government Code section 14780 and DGS replaced the Department of Finance as the approving agency. (Stats. 1965, ch. 371, § 179, pp. 1534, 1551.) Former section 14780 was amended several times (Stats. 1965,

---

[7] The respective motions of the parties that we take judicial notice of various legislative documents are granted.

ch. 1539, § 1, p. 3630; Stats. 1977, ch. 1139, § 1, p. 3659; Stats. 1981, ch. 867, § 6.2, p. 3327; Stats. 1982, ch. 1207, § 2, p. 4409) and in 1983, with certain amendments, became section 10295 (Stats. 1983, ch. 1231, § 4, pp. 4764, 4765). Since its inclusion in the Public Contract Code, the section has been amended on numerous occasions. (Stats. 1986, ch. 843, § 7, p. 2883; Stats. 1993, ch. 1097, § 3, p. 6177; Stats. 1998, ch. 88, § 70; Stats. 1998, ch. 1023, § 2; Stats. 1998, ch. 1024, § 56; Stats. 1999, ch. 457, § 20; Stats. 2000, ch. 36, § 1; Stats. 2000, ch. 402, § 21; Stats. 2000, ch. 402, § 21.5.)

In reviewing the derivation of section 10295 we have found no indication that the Legislature ever contemplated changing the scope of the provision to overturn or modify the decision in *Millholen v. Riley, supra,* 211 Cal. 29. To the contrary, an opinion letter issued by the Legislative Counsel in 1977 confirmed that "[t]he courts are not required to follow the procedures of the State Administrative Manual regarding disbursement of their funds." The opinion explained, "A 'state agency,' for such purposes, is defined as including every state office, officer, department, division, bureau, board, and commission (Sec. 11000, Gov. C.). However, in the landmark case of Millholen v. Riley, 211 Cal. 29 [293 P. 69], the California Supreme Court held that the expenditures of the courts were not subject to review by the Department of Finance under the statutes in operation at that time." The opinion noted two subsequent lower court decisions reaffirming "[t]he authority of the courts to provide for their own disbursement of funds apart from regulation by any department of the executive branch. [(*Hart Bros. Co. v. County of Los Angeles* (1938) 31 Cal.App.2d Supp. 766, 770–771 [82 P.2d 221]; *Rivas v. County of Los Angeles* (1961) 195 Cal.App.2d 406, 410 [15 Cal.Rptr. 829].)]" (Legis. Counsel, letter to Assemblyman Mike Cullen, Dec. 6, 1977.) Similarly, in a later opinion letter from the Legislative Counsel concerning proposed legislation that was not enacted but that would have prohibited a "state agency" from awarding a contract for printing or binding that did not provide for payment of prevailing wage rates, the opinion cited *Millholen v. Riley* and concluded that "[t]he term 'state agency,' as used in [the proposed legislation], does not include agencies created by article VI of the California Constitution, such as the Judicial Council and superior, municipal, and justice courts." (Legis. Counsel, letter to Assemblyman Herschel Rosenthal, Apr. 4, 1978.)

■ This history provides a strong indication that the Legislature has adopted the interpretation excluding the judicial branch from a "state agency" as used in section 10295. "The Legislature, of course, is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.] Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to

have adopted that construction." (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].) " 'It is a cardinal principle of statutory construction that where legislation is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment.' " (*State of California ex rel. Dept. of Employment v. General Ins. Co.* (1970) 13 Cal.App.3d 853, 860 [96 Cal.Rptr. 744].)  ▌ The opinions of the Legislative Counsel, though not binding on the court, are entitled to consideration (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2]), and in this case certainly tend to dispel any suggestion that in repeatedly amending section 10295 and its precursors, the Legislature overlooked the holding in *Millholen v. Riley.*

The conclusion that the courts do not fall within the meaning of a state agency as used in section 10295 is further buttressed by the explicit exclusion of the courts from the definition in section 10295.1, subdivision (d)(3). Section 10295.1 appears in the same article 2 as section 10295 and prohibits state departments and agencies from purchasing tangible personal property from vendors who do not hold a California seller's permit or certificate of registration. Subdivision (d)(3) of this section defines " '[s]tate department or agency' " to mean "every state office, department, division, bureau, board, and commission, but does not include the University of California, the California State University, the Legislature, the courts, and any agency in the judicial branch of government." Although LACDA is correct that this definition is not expressly applicable to section 10295, there is no apparent reason why courts would be excluded from section 10295.1 if they fell within the scope of section 10295.

LACDA's principal response to this showing that the courts were not intended to come within the scope of section 10295 is the refrain that section 10295, subdivision (a) refers to "*all* contracts entered into by *any* state agency," and section 10295, subdivision (b) reiterates that the section "applies to *any* state agency that by general or specific statute is expressly or impliedly authorized to enter into transactions referred to in this section." (Italics added.) However, LACDA's emphasis on this all-inclusive language begs the question of whether the courts are state agencies within the meaning of the section in the first place. If they are not, it is hardly significant that the statute applies to all agencies that are. Similarly, LACDA emphasizes that contracts entered by the courts are not included in any of the exceptions enumerated in section 10295, subdivision (c). But if the courts are not state agencies within the meaning of subdivision (a), it is hardly significant that they are not listed

within the exceptions to the statute. Indeed, if not included within subdivision (a), it would be inconsistent to exclude them under subdivision (c).

■ Hence, we conclude that the AOC is not a "state agency" within the meaning of section 10295, and concededly it is not a "state agency" within the meaning of section 10335. Therefore, the AOC had no obligation to submit its contract with Krekorian to DGS for review and approval, and DGS had no duty to review it. In view of this conclusion, it is unnecessary to consider DGS's further argument that a contrary interpretation of the statute would contravene the constitutional separation of powers.

### Disposition

The judgment is affirmed.

McGuiness, P. J., and Horner, J.,* concurred.

A petition for a rehearing was denied April 10, 2008, and appellant's petition for review by the Supreme Court was denied June 25, 2008, S163281. George, C. J., and Corrigan, J., did not participate therein.

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.