Filed 5/16/13

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)


| | |
|---|---|
| CALIFORNIA ASSOCIATION OF PROFESSIONAL SCIENTISTS,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDMUND G. BROWN, as Governor, etc., et al.,<br><br>Defendants and Appellants. | C066948<br><br>(Super. Ct. No. 34200980000358CUWMGDS) |
| DEPARTMENT OF HUMAN RESOURCES,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1000,<br><br>Defendant and Respondent. | C067288<br><br>(Super. Ct. No. 34200900064854CUMCGDS) |


1

| CALIFORNIA ASSOCIATION OF PSYCHIATRIC TECHNICIANS, | C067461 |
| | |
| Plaintiff and Respondent, | (Super. Ct. No. 34200980000356CUWMGDS) |
| | |
| v. | |
| | |
| EDMUND G. BROWN, as Governor, etc., et al., | |
| | |
| Defendants and Appellants; | |
| | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1000, | |
| | |
| Intervener and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge.  Reversed with directions.

Joan A. Markoff, Will M. Yamada, Paul M. Starkey, Sandra L. Lusich, and Jennifer M. Garten for Defendant and Appellant Edmund G. Brown, as Governor, etc., and Plaintiff, Defendant, and Appellant Department of Human Resources.

Steven B. Bassoff for Plaintiff and Respondent California Association of Professional Scientists and California Association of Psychiatric Technicians.

Paul E. Harris III and J. Felix De La Torre, for Defendant, Intervener, and Respondent Service Employees International Union, Local 1000.

The issue in this case is whether members of certain state bargaining units are entitled to two paid holidays -- Lincoln's Birthday and Columbus Day -- which were removed from the list of paid holidays by Government Code[1] section 19853, operative

---

[1]     Further undesignated statutory references are to the Government Code.

2

February 20, 2009, in response to a fiscal emergency. Section 19853 further provides that a conflicting memorandum of understanding (MOU) executed on or after February 20, 2009, would be controlling. (§ 19853, subd. (g).) The employee organizations that represent members of the affected bargaining units argue that the bargaining units' expired MOU's, which remained in effect by operation of law under the Ralph C. Dills Act (§§ 3512-3524; hereafter Dills Act), supersede section 19853 by virtue of section 3517.6. (§ 3517.8, subd. (a).) We disagree. Section 19853 supersedes the expired MOU's because it is a later enactment, and the MOU's were not executed on or after February 20, 2009. Accordingly, we shall reverse the judgments entered in favor of the employee organizations and remand the cases to the trial court with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     *The MOU's*

Plaintiff California Association of Psychiatric Technicians (CAPT) is the exclusive representative for State Bargaining Unit 18. For the period June 30, 2006 through July 1, 2008, CAPT had an MOU with the state concerning the terms and conditions of employment of its bargaining unit members. That MOU identified Lincoln's Birthday (February 12) and Columbus Day (the second Monday in October) as paid holidays.

Plaintiff California Association of Professional Scientists (CAPS) is the exclusive representative of State Bargaining Unit 10. For the period July 1, 2006, through June 30, 2008, CAPS had an MOU with the state concerning the terms and conditions of employment of its bargaining unit members. That MOU identified Lincoln's Birthday and Columbus Day as paid holidays.

Intervener Service Employees International Union, Local 1000 (SEIU) is the exclusive representative for approximately 95,000 state workers in nine state bargaining units -- 1, 3, 4, 11, 14, 15, 17, 20, and 21. For the period July 1, 2005, through June 30, 2008, each SEIU bargaining unit had an MOU with the state concerning the terms and

3

conditions of employment of its bargaining unit members. Each of those MOU's identified Lincoln's Birthday and Columbus Day as paid holidays. They also contained supersession clauses that read in pertinent part: "if any other provision of this Contract alters or is in conflict with [certain enumerated Government Code sections, including section 19853], the Contract shall be controlling and supersede [section 19853]."

B.    *The Dills Act*

The Dills Act governs the collective bargaining process between certified employee organizations and the state. (*Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989, 1016, fn. 16 (*Professional Engineers*).) Two of its provisions are at issue here: sections 3517.6 and 3517.8. Section 3517.6 was enacted in 1977 (Stats. 1977, ch. 1159, § 4, p. 3755) and states in pertinent part: "In any case where the provisions of [over 100 code sections, including section 19853] are in conflict with the provisions of a memorandum of understanding, the memorandum of understanding shall be controlling without further legislative action." (§ 3517.6, subd. (a)(1).)[2] Section 3517.8 was enacted in 2000 (Stats. 2000, ch. 879, § 2, p. 6515) and provides in pertinent part: "If a memorandum of understanding has expired, and the

---

[2]    Section 3517.6, subdivision (a) (1) reads in its entirety: "In any case where the provisions of Section 70031 of the Education Code, or subdivision (i) of Section 3513, or Section 14876, 18714, 19080.5, 19100, 19143, 19261, 19818.16, 19819.1, 19820, 19822, 19824, 19826, 19827, 19828, 19829, 19830, 19831, 19832, 19833, 19834, 19835, 19836, 19837, 19838, 19839, 19840, 19841, 19842, 19843, 19844, 19845, 19846, 19847, 19848, 19849, 19849.1, 19849.4, 19850.1, 19850.2, 19850.3, 19850.4, 19850.5, 19850.6, 19851, 19853, 19854, 19856, 19856.1, 19858.1, 19858.2, 19859, 19860, 19861, 19862, 19862.1, 19863, 19863.1, 19864, 19866, 19869, 19870, 19871, 19871.1, 19872, 19873, 19874, 19875, 19876, 19877, 19877.1, 19878, 19879, 19880, 19880.1, 19881, 19882, 19883, 19884, 19885, 19887, 19887.1, 19887.2, 19888, 19990, 19991, 19991.1, 19991.2, 19991.3, 19991.4, 19991.5, 19991.6, 19991.7, 19992, 19992.1, 19992.2, 19992.3, 19992.4, 19993, 19994.1, 19994.2, 19994.3, 19994.4, 19995, 19995.1, 19995.2, 19995.3, 19996.1, 19996.2, 19998, 19998.1, 20796, 21600, 21602, 21604, 21605, 22870, 22871, or 22890 are in conflict with the provisions of a memorandum of understanding, the memorandum of understanding shall be controlling without further legislative action."

4

Governor and the recognized employee organization have not agreed to a new memorandum of understanding and have not reached an impasse in negotiations, . . . the parties to the agreement shall continue to give effect to the provisions of the expired memorandum of understanding, including, but not limited to, all provisions that supersede existing law . . . ." (§ 3517.8, subd. (a).)[3]

C.      *The Fiscal Crisis and the Legislature's Response*

When the Budget Act of 2008 (2008 Budget Act) was enacted in September 2008, the state and national economies were in dire straits. (*Professional Engineers, supra,* 50 Cal.4th at p. 1001.) Shortly thereafter, the economy further deteriorated, and in November 2008, the Department of Finance reported that the state faced a revenue shortfall of $11.2 billion for the 2008-2009 fiscal year and a much higher budget deficit by the end of the 2009-2010 fiscal year. (*Ibid.*) The Department of Finance also cautioned that " '[i]f no action is taken to reduce spending, increase revenues, or a combination of both, the state will run out of cash in February and be unable to meet all of its obligations for the rest of the year. [Citation.]' " (*Ibid.*)

"On February 19, 2009, after extended discussion and negotiation, the Legislature passed, and on February 20, 2009, the Governor signed, Senate Bill No. 2 (2009-2010 3d Ex. Sess.) (Senate Bill 3X 2), which revised the 2008 Budget Act in response to the fiscal emergency. (Stats. 2009, 3d Ex. Sess. 2009-2010, ch. 2 (sometimes hereinafter revised

---

[3]      Section 3517.8, subdivision (a) states in its entirety: "If a memorandum of understanding has expired, and the Governor and the recognized employee organization have not agreed to a new memorandum of understanding and have not reached an impasse in negotiations, subject to subdivision (b), the parties to the agreement shall continue to give effect to the provisions of the expired memorandum of understanding, including, but not limited to, all provisions that supersede existing law, any arbitration provisions, any no strike provisions, any agreements regarding matters covered in the Fair Labor Standards Act of 1938 (29 U.S.C. Sec. 201 et seq.), and any provisions covering fair share fee deduction consistent with Section 3515.7."

5

2008 Budget Act)  Section 36 of Senate Bill 3X 2 added section 3.90 to the original 2008 Budget Act (Stats. 2008, ch. 268).  Section 3.90, subdivision (a) provides in part: 'Notwithstanding any other provision of this act, each item of appropriation in this act . . . shall be reduced, as appropriate, to reflect a reduction in employee compensation . . . in the total amounts of $385,762,000 from General Fund items and $285,196,000 from items relating to other funds.'  [T]he amount of the reduction in appropriations for employee compensation set forth in section 3.90 reflected . . . the reductions that the Governor proposed to achieve through [a] two-day-a-month furlough of state employees [and the elimination of two state holidays and a revision of the method of calculating overtime].  Section 3.90, subdivision (a) also indicated the Legislature's intent to make similar reductions in employee compensation for the 2009–2010 fiscal year." (*Professional Engineers*, *supra*, 50 Cal.4th at pp. 1005-1006 & fn. 7, footnote omitted.)[4] The Governor estimated that the elimination of two paid holidays and premium pay for holidays worked "would result in a savings of approximately $39.4 million General Fund in 2008-09 and $74.5 million General Fund in 2009-10."

On February 19, 2009, the Legislature also passed, and on February 20, 2009, the Governor also signed, Senate Bill No. 8 (2009-2010 3rd Ex. Sess.; hereafter Senate Bill

---

[4]     In *Professional Engineers* the issue was whether the Governor possessed the authority to unilaterally implement a mandatory two-day-a-month furlough of represented state employees that reduced such employees' hours and earnings by approximately 10 percent to deal with the fiscal emergency faced by the state at the end of 2008.  (*Professional Engineers, supra,* 50 Cal.4th at p. 999.)  Our Supreme Court held that even if the Governor lacked such authority, the Legislature's 2009 enactment of Senate Bill No. 2 (2009-2010 3d Ex. Sess.), which revised the 2008 Budget Act, operated to ratify the use of the two-day-a-month furlough program as a permissible means of achieving the reduction of state employee compensation mandated by the act.  (*Id.* at pp. 1000, 1005.)  Thus, the court concluded that the 2009 budget legislation validated the furlough program and rejected the employee organizations' challenge thereto.  (*Id.* at p. 1000.)

3X 8), which, among other things repealed then reenacted section 19853. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 4, §§ 6, 7.) Prior to the passage of Senate Bill 3X 8, Lincoln's Birthday and Columbus Day were among the list of paid holidays set forth in subdivision (a) of section 19853. (Former § 19853, subd. (a).) Subdivision (b) of former section 19853 further provided that "[i]f the provisions of subdivision (a) are in conflict with the provisions of a memorandum of understanding . . . , the memorandum of understanding shall be controlling without further legislative action . . . ."[5] Former section 19853 became inoperative on February 20, 2009, and was repealed as of January 1, 2010. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 4, § 6.)[6]

Section 19853 was reenacted on February 20, 2009. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 4, § 7.) As relevant here, Lincoln's Birthday and Columbus Day were

---

[5]     Former section 19853 stated:

"(a) Except as provided in subdivision (c), all employees shall be entitled to the following holidays: January 1, the third Monday in January, February 12, the third Monday in February, March 31, the last Monday in May, July 4, the first Monday in September, the second Monday in October, November 11, the day after Thanksgiving, December 25, the day chosen by an employee pursuant to Section 19854, and every day appointed by the Governor of this state for a public fast, thanksgiving, or holiday.

"[¶] . . . [¶]

"(b) If the provisions of subdivision (a) are in conflict with the provisions of a memorandum of understanding . . ., the memorandum of understanding shall be controlling without further legislative action, except that if the provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act."

[6]     Before former section 19853 was repealed, it was amended to provide: "(f) This section shall become inoperative on February 1, 2009, or the date that the act amending this section in 2009-10 Third Extraordinary Session takes effect, whichever is later, and, as of January 1, 2010, is repealed, unless a later enacted statute, that becomes operative on or before January 1, 2010, deletes or extends the dates on which it becomes inoperative and is repealed." (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 4, § 6.)

7

eliminated from the list of paid holidays set forth in subdivision (a).  In addition, the supersession language contained in former subdivision (b) was deleted, and subdivision (g) was added, which states:  "If subdivision (a) . . . is in conflict with the provisions of a memorandum of understanding *executed or amended . . . on or after [February 20, 2009]*, the memorandum of understanding shall be controlling without further legislative action . . . ."[7]  (Italics added.)  A Senate bill analysis for Senate Bill 3X 8 states that the two holidays and premium pay were being eliminated "in order to achieve budgetary savings."

At the time section 19853 took effect, all of the MOU's at issue here had expired, and the parties had not entered into successor MOU's or reached an impasse in their negotiations.  Indeed, at least 14 of the state's 21 bargaining units were operating under expired MOU's at that time.

D.    *The Underlying Actions*

On October 19 and 20, 2009, CAPT and CAPS, respectively, filed verified petitions for writs of mandate and complaints for declaratory relief against then Governor Arnold Schwarzenegger and the former Department of Personnel Administration,  now the Department of Human Resources (CalHR) (sometimes collectively referred to herein as "the state")[8] in the trial court.  The causes of action for declaratory relief sought a determination that under section 3517.8, the state must comply with the expired MOU's and allow Lincoln's Birthday and Columbus Day as holidays for CAPT's and CAPS's members, while the prayer for mandamus asked for a peremptory writ ordering the state

---

[7]    Premium pay for holidays worked was also eliminated.  (Compare former § 19853, subd. (a) with § 19853, subd. (c).)

[8]    The Governor or his designated representatives, here CalHR, are deemed the " '[s]tate employer' " for purposes of bargaining and meeting and conferring in good faith with recognized employee organizations.  (§ 3513, subd. (j).)

8

to (1) comply with section 3517.8 and give effect to the expired MOU's and provide Lincoln's Birthday and Columbus Day to CAPT and CAPS members, and (2) compensate CAPT and CAPS members as provided in the MOU's if they are required to work "on those days." On November 24, 2009, CalHR filed a complaint against SEIU, seeking, among other things, a declaration that section 19853 supersedes SEIU's expired MOU's and section 3517.8. In April 2010, the trial court consolidated the three cases and designated the CAPT action as the lead case.

In July 2010, SEIU was allowed to intervene in the CAPT action. In addition to the arguments advanced by CAPT and CAPS, SEIU further argued that the state's refusal to honor the MOU's holiday provisions violates the MOU's themselves and section 3517.6.

After oral argument, the trial court granted CAPS's and SEIU's complaints for declaratory relief, determining that "section 3517.8 requires that [the state] give effect to [the expired MOU's between the state and CAPS and SEIU] . . . until such time as the parties reach impasse in negotiations for a new [MOU] and the state implements a provision contrary to the parties' agreement in [the expired MOU's]." The court also issued peremptory writs of mandate, ordering the state to comply with section 3517.8 and give effect to the expired MOU's between the state and CAPS and SEIU and provide Lincoln's Birthday and Columbus Day as holidays to CAPS and SEIU members and "compensate [those] members as provided in the [MOU's] if they were or are required to work on those days." The court denied CAPT's request for declaratory relief because CAPT and the state had since entered into a successor MOU, but issued a peremptory writ of mandate, ordering the state to compensate CAPT members as provided in the expired MOU if they were required to work on Lincoln's Birthday or Columbus Day during the period February 20, 2009, through the effective date of the successor MOU. The court denied CalHR's request for declaratory relief as to section 19853.

The trial court explained the basis of its ruling in a 12-page order. The court concluded "that the expired MOU[']s supersede(d) the provisions of section 19853." The court observed that "the words of [section 19853] do not . . . expressly limit supersession only to those MOU[']s enacted after February 20, 2009. The statute merely provides that it can be superseded by an MOU enacted after that date. It says nothing about whether section 19853 can (or cannot) be superseded by an MOU enacted before that date." The court rejected the notion that the Legislature's decision to narrow the supersession language "mean[s] that the Legislature intended to permit supersession *only* by MOU[']s executed after February 20, 2009. It simply means what it says that supersession is permitted for *at least* those MOU[']s." The court also found that "implied repeal of sections 3517.6 and 3517.8 [by section 19853] is not appropriate" because "the two acts are not clearly repugnant," reasoning, "Both statutes permit supersession by MOU[']s executed after February 20, 2009. Sections 3517.8 and 3517.6 also permit supersession by expired MOU[']s executed before February 20, 2009, but this causes no irreconcilable conflict with section 19853 because section 19853 says nothing about MOU[']s executed before February 20, 2009." The court rejected the assertion that applying section 3517.6 renders section 19853's supersession language superfluous, explaining that "[i]f in the future the reference to section 19853 is removed from section 3517.6, supersession still would be allowed under section 19853." To the extent the application of section 3517.6 does render section 19853's supersession language superfluous, the trial court found "it is reasonable to conclude that the Legislature intended it to be so" given that the two statutes overlapped on the issue of supersession before the amendments to section 19853.[9]

---

[9]     In the trial court, SEIU also asserted that "retroactive application of [section 19853] amounts to an unlawful impairment of contracts" under the contracts clauses of the federal and state Constitutions, which prohibit the state from passing any

The trial court entered final judgment and issued a writ of mandate in the CAPS action on November 29, 2010. The trial court entered final judgment in the CalHR action on January 7, 2011. The trial court entered final judgment and issued a writ of mandate in the CAPT action on February 10, 2011. The state timely appealed from those judgments, and we consolidated those appeals on March 23, 2011.

## DISCUSSION

The state contends "[t]he trial court erred when it found that the [employee organizations'] expired MOU's, which were executed prior to February 20, 2009, superseded section 19853." According to the state, "[t]he trial court's interpretation of section 19853 . . . contradicts the plain language of the statute [and] contravenes the legislative history to effectuate an immediate cost savings by eliminating the holidays and premium pay." We agree.

As with all matters of statutory construction, our review is de novo. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699.) " 'Under well-established rules of statutory construction, we must ascertain the intent of the drafters so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context.' [Citation.]" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 (*Mejia*).) "When the plain meaning of the statutory text is insufficient to resolve the question of its interpretation, the courts may turn to rules or maxims of construction 'which serve as aids in the sense that they express familiar insights about conventional language usage.' [Citation.] Courts also look to the legislative history of the enactment. 'Both the

---

law impairing the obligation of contracts. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) The trial court rejected SEIU's claim, and SEIU has not challenged the trial court's ruling.

11

legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' [Citation.]" (*Ibid*.)

Where reasonably possible, a court must harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.) If inconsistent statutes cannot otherwise be reconciled, a specific provision will prevail over a conflicting general one. (*In re Greg. F.* (2012) 55 Cal.4th 403, 407.) Where conflicting statutes cannot be reconciled, later enactments supersede earlier ones. (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310; see also *People v. Moody* (2002) 96 Cal.App.4th 987, 993.)

Here, all parties agree that on February 20, 2009, when section 19853 was reenacted and Lincoln's Birthday and Columbus Day were eliminated from the list of paid holidays to which state employees are entitled, the terms and conditions of employment of the employee organizations' members were governed by applicable MOU's. Although each of those MOU's had expired, under section 3517.8, the terms of the expired MOU's remained in effect because the parties had not negotiated new MOU's or reached an impasse in their negotiations. (§ 3517.8, subd. (a).)

Each of the expired MOU's identified Lincoln's Birthday and Columbus Day as paid holidays. Moreover, the MOU's further provided that if any of the provisions of the MOU conflict with various statutory provisions, including section 19853, the MOU would control and supersede section 19853. Thus, a conflict exists between section 19853, subdivision (a), on the one hand, and the MOU's on the other. The question here is how to resolve it.

As set forth above, subdivision (g) of section 19853 provides that if the list of paid holidays set forth in "subdivision (a) . . . is in conflict with the provisions of a memorandum of understanding executed or amended . . . on or after [February 20, 2009], the memorandum of understanding shall be controlling without further legislative

12

action . . . ." The state contends that "[o]n its face, section 19853 limits supersession to MOU's executed *after* February 20, 2009." SEIU responds that "[w]hile the amendment to section 19853 allows supersession by MOU[']s executed after February 19, 2009, the amendment did not prohibit supersession of MOU[']s executed before then. [S]upersession of section 19853 is authorized by other legal authority[, namely the Dills Act,] which the Legislature could have amended to avoid supersession but chose to leave intact." Although SEIU is correct that subdivision (g) of section 19853 does not literally state that only MOU's executed or amended on or after February 20, 2009, supersede section 19853 in the event of a conflict, that, as we explain below, is a necessary corollary to the Legislature's decision to narrow section 19853's supersession language. Indeed, if MOU's executed prior to February 20, 2009, also superseded section 19853, subdivision (a), it would undermine the Legislature's purpose in eliminating the two paid holidays and render the Legislature's changes to the supersession language nugatory.

"Under the rules governing statutory construction, when the Legislature enacts an amendment, we presume that this ' "indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one." ' [Citation.] ' "Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights." ' [Citations.]" (*Garrett v. Young* (2003) 109 Cal.App.4th 1393, 1404–1405.) As set forth above, under former section 19853, anytime the provisions of subdivision (a) conflicted with provisions of an MOU, the MOU controlled. (Former § 19853, subd. (b).) In February 2009, the Legislature repealed then reenacted section 19853, which provides that if subdivision (a) is in conflict with the provisions of an MOU "*executed or amended . . . on or after [February 20, 2009],*" the MOU controls. (§ 19853, subd. (g), italics added.) If we construe subdivision (g) of section 19853 as not precluding pre-existing MOU's (MOU's executed or amended prior to February 20, 2009) from superseding section 19853 and apply section 3517.6 to pre-existing MOU's as the trial court did below, then the amendment to the supersession

13

provision in section 19853 would have no effect. Not only would MOU's enacted on or after February 20, 2009, supersede section 19853, subdivision (a) (§ 19853, subd. (g)), but so would those enacted prior thereto (§ 3517.6), including those that had expired and had yet to be renegotiated (§ 3517.8). In other words, as was the case before section 19853 was added in February 2009, anytime the holidays listed in subdivision (a) of section 19853 conflict with provisions of an MOU, the MOU would control. We cannot presume that the Legislature, in narrowing section 19853's suppression language, "engaged in an idle act or enacted a superfluous statutory provision." (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 634.) Accordingly, we reject the trial court's implicit finding that despite having narrowed section 19853's suppression language, the Legislature intended no change in the law. Rather, we interpret section 19853, subdivision (g), as providing that *only* MOU's enacted or amended on or after February 20, 2009, supersede section 19853.

Such an interpretation is consistent with the rule of statutory construction *expressio unius est exlusio alterius,* or " 'to express or include one thing implies the exclusion of the other.' " (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 389, quoting Black's Law Dict. (8th ed. 2004) p. 620, col. 2.) Here, the Legislature expressly identified MOU's executed or amended on or after February 20, 2009, as superseding section 19853 in the event of a conflict. If the Legislature had intended for all MOU's to control in the event of a conflict with section 19853, there would have be no need to amend the supersession language.

Our interpretation also is supported by the legislative history and the wider historical circumstances of section 19853's reenactment. (See *Mejia, supra,* 31 Cal.4th at p. 663.) Section 19853's reenactment was part of a comprehensive budget plan passed in response to a fiscal emergency. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 4, § 7.) At the time section 19853 was reenacted, the state faced a $11.2 billion budget deficit in fiscal year 2008-2009 and a much higher deficit by the end of the 2009-2010 fiscal year.

14

(*Professional Engineers, supra,* 50 Cal.4th at p. 1001.) Moreover, the Department of Finance warned that the state would run out of cash in February 2009 if immediate action was not taken. (*Ibid.*) The Legislature responded by passing a comprehensive budget plan, which included a two-day-a-month furlough program and the elimination of Lincoln's Birthday and Columbus Day as paid holidays and premium pay. (*Id.* at pp. 1005-1006, & fn. 7, 1046-1047.) The Governor estimated that the elimination of the two paid holidays and premium pay would "result in a savings of approximately $39.4 million General Fund in 2008-09 and $74.5 million General Fund in 2009-10." A Senate bill analysis confirms that the elimination of two paid holidays and premium pay was intended to result in budgetary savings. The trial court's interpretation, which exempted the majority of then existing MOU's from section 19853, ignores this legislative history and nullifies the immediate cost savings sought by the Governor and Legislature. Under the trial court's interpretation, only those MOU's executed or amended in the future would be affected by the changes to section 19853, thereby significantly reducing any immediate cost savings.

SEIU argues that the state "failed to provide any evidence that the estimated [savings] included savings derived by eliminating the holidays and premium pay to SEIU bargaining units. [¶] In fact, [the state] provide[d] no evidence to rule out the possibility that the savings came solely from applying the changes to employees not covered under any MOU (managers, supervisors, confidential employees, etc.) and/or those employees working under the other 11 labor agreements." The state responds that "the record demonstrates that the cost-savings achieved by eliminating the holidays results from eliminating the holidays for *all* state employees," including the 95,000 state workers SEIU represents. Among other things, the state points to evidence that at the time section 19853 was reenacted, at least 14 the state's 21 bargaining units were operating under expired MOU's and persuasively argues that "[a]n interpretation that section 19853 can be superseded by expired MOU's would mean that the vast majority of union contracts

15

would have superseded section 19853, and the cost savings anticipated in the Senate Floor Bill Analysis would not exist." Having reviewed the legislative history and considered the historical context in which section 19853 was reenacted, we have no doubt that the Legislature eliminated the two holidays and premium pay in an effort to address an immediate fiscal crisis. Accordingly, we find it inconceivable that the Legislature intended to exempt the vast majority of the state's bargaining units from those provisions.

Having interpreted section 19853 as limiting supersession to MOU's executed or amended on or after February 20, 2009, we are left with a conflict between it and section 3517.6, which provides that anytime there is a conflict between section 19853 and an MOU, the MOU controls. (§ 3517.6, subd. (a)(1).) As we shall explain, there is no rational basis for reconciling the two statutes, and thus conclude that section 19853, subdivision (g), supersedes section 3517.6, subdivision (a)(1), as a later enactment.

The employee organizations claim and the trial court found that section 19853, subdivision (g), on the one hand, and sections 3517.6 and 3517.8 on the other, could be harmonized by interpreting section 19853, subdivision (g), as applying to MOU's executed or amended on or after February 20, 2009, and section 3517.6 as applying to MOU's executed or amended prior thereto. As detailed above, rather than harmonize the statutes, such an interpretation renders section 19853, subdivision (g), nugatory and reduces the Legislature's changes to section 19853's suppression language to an idle act.

Before we address sections 19853 and 3517.6, we pause to note that we agree with the trial court's determination that sections 19853 and 3517.8 can be harmonized. Under section 3517.8, the provisions of an expired MOU, including those that "supersede existing law," continue in effect until the state and the employee organization agree to a successor MOU or reach an impasse in negotiations. (*Id.*, subd. (a).) Thus, as previously discussed, the provisions of the expired MOU's remained in effect at the time the Legislature enacted and the Governor signed the bill amending, repealing, and adding section 19853. It does not follow, however, that the terms of those MOU's supersede

16

section 19853. By reenacting section 19853, the Legislature effectively altered the terms of the MOU's, including the holiday provisions contained in all of the expired MOU's and the suppression provisions contained in the SEIU's MOU's. SEIU challenged the Legislature's ability to do so in the trial court and lost, and it has not challenged the trial court's ruling. (*Ante,* fn. 9.) Moreover, "[w]e find nothing in the language or legislative history of [section 3517.8] to indicate the Legislature intended to limit its authority to legislate changes in terms and conditions of employment during the period when [CalHR] is bargaining with a recognized employee organization following the expiration of an MOU." (*Stationary Engineers Local 39* (2009) PERB Dec. No. 2085-S [34 PERC ¶ 24, p. 97], cited with approval in *Professional Engineers*, *supra*, 50 Cal.4th at 1048.)

Unlike sections 19853 and 3517.8, there is no rational way to harmonize sections 19853 and section 3517.6. As interpreted here, subdivision (g) of section 19853 provides that *only* MOU's executed or amended on or after February 20, 2009, supersede subdivision (a) of section 19853 in the event of a conflict. Conversely, under section 3517.6, anytime there is a conflict between an MOU and section 19853, the MOU prevails. Where conflicting statutes cannot be reconciled, later enactments supersede earlier ones. (*Collection Bureau of San Jose v. Rumsey, supra* 24 Cal.4th at p. 310; *People v. Moody, supra,* 96 Cal.App.at p. 993.) Section 19853 therefore prevails.

As detailed above, attempting to harmonize the two statutes, as the trial court did below, renders subdivision (g) of section 19853 nugatory -- a result that should be avoided if possible. (See *Los Angeles County Dependency Attorneys, Inc. v. Department of General Services* (2008) 161 Cal.App.4th 230, 237.) Also, as previously discussed, such an interpretation reduces the Legislature's narrowing of the supersession language to an idle act and undermines its purpose in eliminating the two holidays and premium pay. Moreover, our conclusion is consistent with the principle of reconciling statutes by giving a more specific provision precedence over a more general provision. (*In re Greg F. supra,* 55 Cal.4th at p. 407.) Section 3517.6, subdivision (a), generally governs

17

conflicts between MOU's and over 100 statutes. Section 19853, subdivision (g), governs conflicts between MOU's and section 19853.

For all the reasons set forth above, we conclude that section 19853 supersedes the expired MOU's at issue here and that the trial court erred in concluding otherwise.

## DISPOSITION

The judgments granting CAPS's, CAPT's, and SEIU's requests for declaratory relief and petitions for writs of mandate are hereby reversed. The judgment denying CalHR's request for declaratory relief as to section 19853 is reversed and affirmed in all other respects. The cases are remanded to the trial court with directions to (1) deny declaratory relief and vacate its writs issued in favor of CAPS, CAPT, and SEIU, and instead to issue orders denying such relief and the petitions, and (2) grant declaratory relief to CalHR as to section 19853, stating that the list of holidays set forth in subdivision (a) of section 19853 supersedes the expired MOU's between the state and members of State Bargaining Units 1, 3, 4, 11, 14, 15, 17, 20 and 21.

The state shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


      BLEASE       , Acting P. J.


We concur:


     HULL      , J.


     ROBIE     , J.